WIFFLER et al. v. MURPHY et al.

(Supreme Court, Appellate Division, Second Department. June 12, 1900.)

1. BILLS AND NOTES—CONSIDERATION—COUNTERCLAIM—DIRECTING VERDICT—LIABILITY.

Where an account rendered to a debtor, a portion of which was disputed, was paid in cash, and the creditor was given a note, and thereafter .other accounts were rendered for goods sold to such debtor for which notes were given, the several amounts of the notes and accounts being finally included in one note, which the maker testified was given in payment of the last preceding note and the account to that time, it was error, in an action on the note, where counterclaim was made for a lesser amount, to refuse to direct a verdict for plaintiffs, since such maker was clearly liable for the amount of such note, subject only to reduction by the amount found for him on the counterclaim.

2. SAME—TRIAL—EVIDENCE—INSTRUCTIONS—ERROR.

Where an account rendered a debtor, a portion of which was claimed to be a debt of his father, was paid in cash and by giving a note, and thereafter other accounts were rendered for goods sold to the debtor for which notes were given, the several amounts of the notes and accounts being finally included in one note, which the maker testified was given in payment of the last note and the account to that time, it was error in an action thereon to charge that defendant said, in effect, that he did not give the note in payment of his father's debt, or anybody's debt, or his own debt, because he said substantially he did not owe that amount.

3. SAME—MAKER—ACCOMMODATION INDORSEMENT—AGENCY FOR PAYEE.

Where the maker of a note testified that he secured an indorsement on such note and previous notes entering into its consideration, at the payee's request, in order that money might be obtained thereon at a bank, and that the payee said the indorser would not have to pay, and that it would be a great accommodation to him, and there was other testimony that the payee said he requested the indorsement, but was not going to rely on it for payment, the indorser testifying that nothing was received therefor, while the payee denied asking that the note be made for accommodation or under any circumstances except in payment of an account due and previous notes likewise indorsed, a verdict in favor of the indorser was sufficiently supported by the evidence.

4. SAME—TESTIMONY OF INDORSER—CONVERSATIONS WITH MAKER.

In an action by the payee against the maker and indorser of a note, where the evidence was sufficient to justify a finding that the maker was the agent of the payee to secure an accommodation indorsement on such note and other notes entering into its consideration, it was not error to admit testimony of such indorser as to the signing of such other notes at request of the maker for the payee, and the circumstances and conversations in regard thereto had with the maker when the payee was not present.

Appeal from trial term, Westchester county.

Action by Joseph J. Wiffler and another against John A. Murphy and another. From a judgment in favor of the defendants and an order denying a new trial, plaintiffs appeal. Reversed as to defendant John A. Murphy, and affirmed as to defendant Mary A. Murphy.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Ralph E. Prime, for appellants.

Adrian M. Potter, for respondents.

GOODRICH, P. J. The action is upon a promissory note of $2,500, made by the defendant John A. Murphy, and indorsed by his mother, the defendant Mary A. Murphy. The defense is that the note was

given without consideration, as an accommodation, and in the answer of John there is a counterclaim for $800, money loaned by him to the plaintiffs. The jury rendered a verdict for the defendants, and from the judgment entered thereon the plaintiffs appeal.

Denis Murphy, the father of John and husband of Mary, traded with the plaintiffs from 1892, and had given them a note for $800, dated June 10, 1895, which they had discounted at the Citizens' National Bank of Yonkers. John testified that when the note matured Joseph, one of the plaintiffs, asked him if he would not let him have the money to take up the note, and that he gave him a check for the amount, to the order of Wiffler Bros., the plaintiffs' firm. This is denied by Joseph. The check, which was produced, was not indorsed by the plaintiffs' firm, and so would seem to support the testimony of Joseph. Mr. Keeler, cashier of the bank, testified that the check was not handed to him by either of the plaintiffs, but was charged up to John A. Murphy; that it was used to take up Denis' note, and was returned with other vouchers to John; and that the note was returned either to John or to Denis. He also testified that six or seven weeks before the trial, and after the commencement of the action, the defendants' attorney, Mr. Potter, called on him, and asked him to procure the indorsement of the check by the plaintiffs. At that time he indorsed on the check the words, "Check paid for note of Denis Murphy to Wiffler Bros., due Sept. 10, '95. J. H. Keeler, Ca." He afterwards said that Joseph refused to have anything to do with the matter, but that John, the other plaintiff, at his request, wrote on the check below the cashier's memorandum the words, "The above statement is correct. Wiffler Bros." Out of this transaction the counterclaim arose. As the jury simply rendered a verdict for the defendants, we may assume that they found against the counterclaim of the defendant John, and neither defendant has appealed.

The account with the defendant John seems to have commenced in 1897, and a bill was rendered October 1st, the first item of which was "$840.44, bill rendered," with other items of sale, bringing the amount up to $944.97, for which a note had been given. John denied that any such account was rendered to him, and said that the item of $840.44 was a charge against his father. On October 15th, however, he paid on account $100 and $50, and a new note for $794, indorsed by his mother, was given by John. Later, other bills were rendered to J. A. Murphy & Bro., beginning with an item, "Bill rendered, $1,051.73," and containing items of goods sold, bringing the total, on December 31, 1897, up to $1,258.22, for which the note of John, indorsed by his mother, was given on January 14, 1898. A new account was begun on January 3, 1898, and rendered at the end of that month. It contained an entry of cash paid by the plaintiffs for the $794 note. When the $1,258.22 note became due, another bill for $986.02 had accrued, and a new note was given by John for $2,244.24, the aggregate of the note and account. This also was indorsed by Mary. At the maturity of that note other accounts, of $233.17 and $15.35, having been rendered, the note in suit was given. The previous note of $2,244.24 and these accounts amount to $2,-492.76. The defendant John testified, in answer to the following

question, "Was the $2,500 note in that suit given in payment of the $2,244.24 note and the account rendered to you up to that time?" "Yes, sir."

The defendants, at the close of the case, moved for the direction of a verdict in their favor, on the ground that the plaintiffs had not proved any consideration for the making of the note, and also for the direction of a verdict in favor of the defendant Mary on the same ground. The plaintiffs moved for the direction of a verdict against both defendants, and also for a verdict against John, which being refused, they excepted. The counsel for the defendants said, "If Mr. Prime wants to do that, I withdraw my motion for the direction of a verdict."

There would be no difficulty in predicating error on the refusal of the court to direct a verdict against John for the amount of the note, on his own testimony above quoted, except for the fact that there was conflicting evidence as to the existence of the counterclaim in his favor for the $800 check. The motion did not state the amount for which the direction was asked, but it is clear that a verdict against John should have been directed for the amount of the note, subject to a proper deduction if the jury should find in favor of John's counterclaim. As they found a general verdict for both defendants, we must assume that they found that the plaintiffs had no claim on the note, and John no claim on his check.

The court charged:

"John Murphy, the defendant, said, in effect, 'I did not give that note in payment of the debt of my father; I did not give it in payment of anybody's debt, or in payment of my own debt;' because, he said, substantially, 'I did not owe them that amount.'"

To this the plaintiffs excepted. It seems clear to us that there was no evidence justifying this charge, that the verdict in favor of John should not be permitted to stand, and that as to him a new trial should be ordered.

The liability of the defendant Mrs. Murphy stands on a different plane. There was evidence tending to show that she received no consideration and was an accommodation indorser. There was a conflict of evidence as to the circumstances under which she indorsed the note. On the first day of the trial John testified:

"I had given Mr. Wiffler a previous note, and he met me some time previous to the other note coming due, and he told me he was very short, and he wanted to know if I could not increase that note, and I told him I would see about it. He said I would help him a great deal by putting my name on there, and getting the original indorsement—my mother's indorsement—to the note, so that he could put it in the bank, and get the money, as he was very short. I took the note, and got my mother to indorse it, and took it down to Mr. Wiffler. Q. What did you say to your mother? (Plaintiff objected, unless said in presence of plaintiffs. Objection overruled. Plaintiffs excepted.) A. I asked my mother to sign this note. She wanted to know whose name it was. I told her Mr. Wiffler's; that Mr. Wiffler was in a hole, and that he would like to get some money to help him out of it, and that she would not have to pay; that the Wifflers would not look to her for payment of the note. That is exactly what Mr. Joseph Wiffler told me."

On the next day of the trial, after an interval of three days, John testified:

"I had a conversation with Mr. Joseph Wiffler concerning other notes. He came to the house. This is the time the first note was given and sent in, and said he wanted to see me. I came out in the barnyard, and he had a note filled out, and he asked me to sign it, and I signed the note, and he went away, and came back before dinner again, and he told me to get my mother to indorse it so that he could use the money. He told me he was in a hole; that there were some accounts in the bank of notes he had in there belonging to other people, that the bank people had charged up against his account, and he was in a very bad hole. He said if I could get my mother's indorsement on this note it would be a great accommodation to him. He said that we would not be obliged to pay it; that he would not look to us for payment. He said the bank people asked him to get my mother's indorsement on it."

Denis Murphy also testified that he had a conversation with Joseph Wiffler, in which the latter said that he told John to get Mrs. Murphy's indorsement, but that he had had no dealings with her; that she was "not going to be looked to for the payment of the note." Mrs. Murphy testified that John asked her to indorse the note in suit and the previous notes, and that she never received anything for doing so. Joseph Wiffler testified that he never had "asked for any one of those notes to be made for our accommodation. * * * I never asked for these notes under any circumstances, except in payment of the account which they owed us and previous notes given by them."

Here was a clear conflict of evidence, which justified the court in submitting to the jury the question whether John, at the request of the plaintiffs, obtained the indorsement, and whether in this respect he was acting as their agent, and we may not interfere with the verdict.

The plaintiffs contend that evidence was improperly admitted, as follows: Mrs. Murphy, under examination, said:

"I had signed other notes at the request of John A. Murphy for Wiffler Bros. Q. Was it under the same circumstances? (Objected to by plaintiffs for same reasons [referring to a previous objection to evidence of conversations between Mrs. Murphy and her son as to the indorsement of the note in suit, in the absence of the plaintiffs]. Objection overruled. Plaintiff excepted.) A. Yes. Q. What statement did John A. Murphy make to you when you signed the other notes? A. Just the same as he said the first time to me."

There was evidence sufficient to justify the jury in finding that John was the agent of the plaintiffs to obtain the accommodation indorsement of Mrs. Murphy on all the notes, and the admission of her evidence was not error. The other exceptions have received our consideration, but none seems to cover prejudicial error in rulings.

The judgment in favor of Mrs. Murphy should be affirmed, but, for reasons already stated, the judgment as to John should be reversed, and a new trial granted. All concur.